

June 26, 2020

**VIA ECF**
The Honorable Alison J. Nathan
United States District Judge
United States District Court
40 Foley Square
New York, NY 10007

Re: *United States v. Michael Goliszeski,* 19-cr-00889-AJN

Dear Judge Nathan:

On behalf of defendant Michael Goliszeski, I write to briefly reply to the Government's sentencing submission dated June 22, 2020.

### 1.      Mr. Goliszeski has taken responsibility for his misconduct

First, we write to address the Government's contention that Mr. Goliszeski has painted an inaccurate picture about the timing and extent of Mr. Goliszeski's acceptance of responsibility.

The Government contends that, in a recorded interview on November 14, 2018 "[w]hen first confronted by investigators hired by Rexton and New York City Police Department (NYPD) detectives, Goliszeski lied and failed to accept responsibility for his fraud" and "denied any improprieties."  But when Mr. Goliszeski was first confronted by his employer, he was not even aware that investigators and an NYPD detective were interviewing him.  Instead, the NYPD detective and the investigators led Mr. Goliszeski to believe that they were simply auditors seeking to interview Mr. Goliszeski about the billing process.  Mr. Goliszeski did not know that law enforcement was investigating him until months later.  During the recorded interview, Mr. Goliszeski acknowledged to the "auditors" that he owned companies to which work from Rexton was sent, that he had never disclosed this to senior management, that it was unethical, and that he would understand if he was fired.  While he minimized his relationship with the bookkeeper to protect her, he acknowledged that they were very good friends who had purchased real estate together.  At no time during that interview was he aware that law enforcement was investigating him, and indeed he did not learn that an NYPD detective was involved in the meeting until the Government filed its sentencing submission.

The Government also contends that Mr. Goliszeski did not accept responsibility in the civil litigation until the U.S. Attorney became involved in the case, *see* Gov. Opp. at 5, but that is inconsistent with the timeline of the civil litigation.  On November 14, 2018, both Mr. Goliszeski and the bookkeeper were served with the civil lawsuit.  Mr. Goliszeski shortly thereafter retained our firm, Gelber & Santillo PLLC, as civil litigation counsel.  At the outset, Mr. Goliszeski was crystal clear that he did not want to fight the case and he just wanted to make amends and return the money.  This firm, as Mr. Goliszeski's civil counsel, reached out to Rexton shortly thereafter

The Honorable Alison J. Nathan
June 26, 2020                                                                                              Page 2

to discuss settlement, and the parties held an in person settlement meeting as early as December 12, 2018.  As early as February 2019, acting as Mr. Goliszeksi's civil attorneys, our firm made clear to Rexton that Mr. Goliszeski was willing to pay back the full value of the money he understood to be at issue.  It was only when a settlement could not be finalized in time for a court deadline that our firm filed a motion to dismiss as part of the routine course of a civil litigation based on the sufficiency of the pleadings.  Mr. Goliszeski thus made earnest efforts to pay back Rexton months before he filed a motion to dismiss and months before he became aware of the U.S. Attorney's involvement in the case in July 2019.

As noted in the defense opening submission, Mr. Goliszeski acknowledges that over the course of several years, he steered work to his own company from his employers unbeknownst to them, submitted fraudulent invoices and overbilled.  He also acknowledges, as the Government contends, that this was driven by misguided greed.  He shouldn't have done it all, and he shouldn't have done it for years.  Mr. Goliszeski has been grappling with this in regular therapy sessions, and has written that:  "I know now that, while before I had things that I wanted, all I need is my family and friends, an honest, humble job, and a modest place to live. I will never again make the mistake of doing anything dishonest to get more than I need."  Ex. C-2.  While Mr. Goliszeski cannot change his past conduct, since November 14, 2018 he has made a heartfelt and sustained commitment to make amends, and to closely examine the source of his misconduct and make sure that it never happens again.  He has taken responsibility.

2.      **Mr. Goliszeski and His Family Suffered Financially As a Result of the Settlement**

The Government also suggests that Mr. Goliszeski did not suffer financially to pay back Rexton because the bookkeeper paid the majority of the settlement and Mr. Goliszeski continues to have substantial assets.  Mr. Goliszeksi and the bookkeeper have lived together for 15 years and plan to spent the rest of their lives together.  They have jointly sold their assets, including Mr. Goliszeski's home of 15 years, to pay back Rexton.  Together, they have downsized to a rental apartment.  While Mr. Goliszeski had fewer individual personal assets to contribute, his family as a whole has suffered a substantial financial hardship as a result of the settlement.

Additionally, the Government cites to the Presentence Report to note that Mr. Goliszeski continues to have substantial assets.  But the PSR was dated several months ago, and does not reflect Mr. Goliszeski's current assets.  Mr. Goliszeski has taken $137,426.23 for the payment of restitution at sentencing, and has had to take substantial withdrawals to pay the taxes from his earlier withdrawals to pay back Rexton and legal fees.  His current IRA balance is substantially less now, will be subject to taxation at withdrawal, and has to last for the rest of his life.

Finally, defendants routinely make payments toward restitution obligations over time, so it is not insignificant that Mr. Goliszeski instead liquidated his assets upfront to make payment.

The Honorable Alison J. Nathan
June 26, 2020                                                                                                     Page 3

3.      **At 69 years old, Mr. Goliszeksi Would Be In Grave Danger If He Is
        Incarcerated**

Finally, the Government argues that a non-custodial sentence is not warranted in Mr.
Goliszeski's case due to the COVID-19 pandemic simply because Mr. Goliszeski is non-violent
and 69 years old.  *See* Gov. Opp. at 7.  But defense counsel does not argue that every non-violent
offender age 65 and over should be categorically excluded from a custodial sentence, only that,
given the unprecedented pandemic and the other 3553 factors in Mr. Goliszeski's case, a non-
custodial sentence is warranted here.  Mr. Goliszeski is a first time, non-violent offender.  He has
otherwise lived a law-abiding and productive life, working hard and helping family members and
friends at every turn.  He has suffered from acute anxiety and depression, and he has participated
in sustained therapy to reckon with his wrongdoing.  By sentencing, he will also have made full
restitution to his employer.  Under the facts of Mr. Goliszeksi's case, a custodial sentence that
exposes him to the heightened risk of death would be grossly disproportionate.

The Government's argument also minimizes the gravity of the risks to the elderly from
exposure to COVID-19 at the Bureau of Prisons.  Of the 84 inmates who have died from
COVID-19 in BOP custody, approximately 90% of them have been age 50 years and older, and
approximately 54% of them have been age 60 and older.  See Exhibit D, Chart of BOP Deaths by
Age.[1]  This is significant given that inmates 51 years and older only comprise approximately
20% of the BOP population and individuals 61 years and older only comprise 6% of the BOP
population.  *See* https://www.bop.gov/about/statistics/statistics_inmate_age.jsp (last accessed
June 25, 2020).  In addition, it is clear even from the little information provided in the press
releases that some of the inmates exposed to COVID-19 were never transported to a hospital for
life-saving treatment, but merely were placed in isolation after testing positive for COVID-19
and died in their cells.  *See, e.g.,* Exhibit E, May 29, 2020 BOP Press Release Regarding Yusuf
Death (noting that Mr. Yusuf tested positive for COVID-19 on May 7, was placed in isolation,
and "was found unresponsive" in his cell and subsequently pronounced dead).  These reports
demonstrate the life-threatening risks to Mr. Goliszeski if he is given a custodial sentence.

For these reasons and the reasons set forth in our opening submission, we respectfully
submit that a non-custodial sentence would be sufficient but not greater than necessary to serve
the goals of sentencing.

Thank you for your consideration.

Respectfully submitted,

/s/ Kristen M. Santillo
Kristen M. Santillo

---

[1] Note that this information was compiled from a review of the BOP Press Releases regarding each individual's
death and does not take into account deaths at residential reentry centers or private facilities.  *See*
https://www.bop.gov/resources/press_releases.jsp.

# EXHIBIT D

| BOP Facility | Name of Inmate | Date of BOP Press Release | Age of Inmate |
|---|---|---|---|
| FCI Butner | John Marrone | 6/14/20 | 85 |
| FCI Butner | Dongfan Greg Chung | 5/28/20 | 84 |
| FCI Butner | Charles Richard Rootes | 4/12/20 | 81 |
| FCI Terminal Island | Michael McDonald | 6/22/20 | 80 |
| FCI Terminal Island | Rex Damon Begay, Sr., | 4/29/20 | 80 |
| FCI Butner | Steve Arthur Robinette | 5/31/20 | 79 |
| FMC Fort Worth | Thomas Rogers | 5/12/20 | 79 |
| FMC Fort Worth | Oscar Ortiz | 4/24/20 | 78 |
| FCI Butner | Andre Williams | 4/13/20 | 78 |
| FCI Butner | John A. Brust | 6/6/20 | 77 |
| FMC Devens | Darrel Underhill | 5/4/20 | 76 |
| FCI Oakdale | George Jeffus | 4/10/20 | 76 |
| FCI Elkton | Frank McCoy | 4/4/20 | 76 |
| FMC Fort Worth | Robert Hoffman | 6/11/20 | 75 |
| USP Lompoc | Jimmie Lee Houston | 5/6/20 | 75 |
| FCI Butner | Bobby Lee Medford | 6/3/20 | 74 |
| FCI Butner | Juan Ledoux-Moreno | 6/2/20 | 74 |
| FMC Fort Worth | Charles Hanberry | 5/15/20 | 74 |
| FCI Butner | Eric Spiwak | 5/25/20 | 73 |
| FCI Terminal Island | Leonard Auerbach | 4/30/20 | 73 |
| FCI Butner | William Walker Minto | 4/28/20 | 73 |
| FCI Terminal Island | Bradley James Ghilarducci | 4/15/20 | 73 |
| FCI Elkton | David Ehle | 4/14/20 | 71 |
| FCI Terminal Island | Scott Douglas Cutting, Sr. | 5/9/20 | 70 |
| FCI Elkton | James Druggan | 5/6/20 | 70 |
| FMC Lexington | Charles Woolsey | 6/10/20 | 69 |
| FCI Oakdale | George Escamilla | 5/9/20 | 67 |
| FCI Butner | Fabian Tinsley | 4/17/20 | 67 |
| FCI Butner | Norman F. Grimm, Jr. | 6/25/20 | 66 |
| FMC Lexington | Richard Saettel | 5/15/20 | 66 |
| USP Lompoc | Oliver M. Boling | 4/17/20 | 66 |
| FCI Oakdale | David Townsend | 4/2/20 | 66 |
| FCI Terminal Island | James Lino | 5/13/20 | 65 |
| FMC Fort Worth | Donnie Grabener | 4/25/20 | 65 |
| FCI Elkton | Margarito Garcia-Fragoso | 4/3/20 | 65 |
| FCI Butner | David Grant | 5/31/20 | 63 |
| FCI Butner | Bernardo Luis Olarta-Loaiza | 5/29/20 | 63 |
| FMC Fort Worth | Joseph Young | 5/19/20 | 63 |
| FMC Devens | Robert Herndon | 6/3/20 | 62 |
| FMC Lexington | Fidel Torres | 5/21/20 | 62 |
| FCI Elkton | William Hutsell | 4/16/20 | 62 |
| FCI Butner | Mark E. Hebert | 6/14/20 | 61 |
| FMC Fort Worth | Arnoldo Almeida | 4/22/20 | 61 |
| FMC Lexington | Calderon Mendoza, Carlos | 5/15/20 | 60 |

| | | | |
|---|---|---|---|
| FCI Butner | Jerry Lynn Dempsey | 5/15/20 | 59 |
| FMC Lexington | Juan Mata | 5/11/20 | 59 |
| FMC Fort Worth | Kevin Ivy | 5/3/20 | 59 |
| FCI Terminal Island | Michael Fleming | 4/19/20 | 59 |
| FCI Danbury | Anthony David Gentile | 4/18/20 | 59 |
| FCI Butner | William E. Miller | 5/7/20 | 58 |
| FCI Terminal Island | Eduardo Robles-Holguin | 5/4/20 | 58 |
| USP Yazoo City | Randy Bise | 5/6/20 | 57 |
| FCI Butner | Gary Edward Nixon | 4/13/20 | 57 |
| FCI Oakdale | James Wilson | 4/2/20 | 57 |
| FCI Butner | Andrew Charles Markovci | 6/4/20 | 56 |
| FCI Lompoc | Daniel Lee Vadnais | 6/1/20 | 56 |
| USP Terre Haute | Gregory Phinton Glenn | 5/26/20 | 56 |
| FMC Fort Worth | Vernon Adderley | 5/12/20 | 56 |
| FMC Fort Worth | Guadalupe Ramos | 5/10/20 | 56 |
| FCI Elkton | Michael Brookwalter | 5/8/20 | 56 |
| FTC Oklahoma City | Douglas Allen Reid | 5/2/20 | 56 |
| FCI Oakdale | Wallace Holley, Jr | 4/3/20 | 56 |
| FCI Butner | Joe Tapia, III | 6/24/20 | 55 |
| FCI Butner | Wayne Delvin Littlecrow | 6/20/20 | 55 |
| FCI Elkton | Richard Nesby | 4/26/20 | 55 |
| FCI Oakdale | Michael Lilley | 4/15/20 | 55 |
| FCI Terminal Island | Adrian Solarzano | 5/27/20 | 54 |
| FCI Terminal Island | Stephen Cino | 4/30/20 | 54 |
| FCI Milan | Daniel Kimbrough | 4/27/20 | 53 |
| FCI Elkton | Woodrow Taylor | 4/2/20 | 53 |
| FCI Butner | Isaac Lamar Byers | 5/26/20 | 52 |
| FCI Milan | Willie Peterson | 5/1/20 | 51 |
| FCI Yazoo City | Emanuel Brewster Jr. | 6/5/20 | 50 |
| FMC Fort Worth | Bich Tran | 5/18/20 | 50 |
| FCI Oakdale | Patrick Jones | 3/28/20 | 49 |
| FMC Lexington | Stephen Cook | 6/4/20 | 48 |
| FCI Butner | John Doe | 4/13/20 | 46 |
| FCI Yazoo City | Dewayne Antonio Mitchell | 6/11/20 | 43 |
| FCI Milan | John Ng | 4/24/20 | 43 |
| FCI Elkton | Alvin Turner | 4/13/20 | 43 |
| FCI Oakdale | Nicholas Rodriguez | 4/1/20 | 43 |
| FCI Lompoc | Mohamed Yusuf | 5/29/20 | 37 |
| FMC Carswell | Andrea Circle Bear | 4/28/20 | 30 |

# EXHIBIT E



**U.S. Department of Justice**
**Federal Bureau of Prisons**

---

**FOR IMMEDIATE RELEASE**
May 29, 2020

Contact: Office of Public Affairs
202-514-6551

### Inmate Death at FCI Lompoc

WASHINGTON, D.C.:  On Monday, May 25, 2020, at approximately 1:00 p.m., Mohamed Yusuf was found unresponsive at the Federal Correctional Institution (FCI) in Lompoc, California.  Responding staff immediately initiated life-saving measures.  Staff requested emergency medical services (EMS) and life-saving efforts continued; however, Mr. Yusuf was subsequently pronounced dead by EMS personnel.  Mr. Yusuf tested positive for COVID-19 on May 7, 2020, and was placed in isolation in accordance with Centers for Disease Control and Prevention guidance.

Mr. Yusuf was a 37-year-old male who was sentenced in the Eastern District of New York to a 132-month sentence for Conspiracy to Provide Material Support to a Foreign Terrorist Organization.  He had been in custody at the Federal Correctional Complex Lompoc since May 24, 2018.

FCI Lompoc is a low security facility that currently houses 949 male offenders in Lompoc, California.

The Bureau of Prisons will continue to provide daily updates and information on actions related to COVID-19 at www.bop.gov/coronavirus/index.jsp.

Additional information about the Bureau of Prisons can be found at www.bop.gov.

###